IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORTH CASCADES CONSERVATION COUNCIL, a nonprofit organization,<br><br>Plaintiff,<br><br>v.<br><br>JASON J. TAYLOR, in his official capacity as Superintendent of the North Cascades National Park Service Complex; JESSICA BOWRON, in her official capacity as Acting Director of the National Park Service; the NATIONAL PARK SERVICE; DOUG BURGUM, in his official capacity as Secretary of the United States Department of Interior; and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants. | NO.<br><br>COMPLAINT |



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

## I. NATURE OF ACTION

1. On August 28, 2026, the Park Service decided to allow road construction within the active channel of the Stehekin River, a river that is currently eligible for inclusion in the national Wild and Scenic Rivers system, but may lose that eligibility if the road segment is constructed. The road construction would kill spawning native Kokanee salmon and would violate the Park Service's own management policies. The impacts of constructing the road in the Stehekin River were never analyzed under the National Environmental Policy Act ("NEPA").

2. Plaintiff brings this civil action against the above named Defendants (collectively hereinafter the "National Park Service," "NPS," or "Park Service") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, for violations of the National Park Service Organic Act, 54 U.S.C. § 100101 (formerly cited as 16 U.S.C. § 1) *et seq*. and Redwoods Amendment (hereinafter "Organic Act") and its implementing regulations; the Park Service's regulations and management policies; and NEPA, 42 U.S.C. § 4321 *et seq*.

3. On August 28, 2026, the National Park Service, by and through Jason J. Taylor, its Superintendent of the North Cascades National Park Service Complex, issued a final agency determination titled: "Categorical Exclusion Documentation Form (CE Form) and Decision Record" for a project NPS describes as "Reconstruct portion of Company Creek Road WA2026-NPS-1 (Emergency temporary flood



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

repair project) PEPC Project Number: 138319" (hereinafter "Company Creek Road Project" or "Project").

4. The Company Creek Road Project, as approved on August 28, 2026, includes constructing a segment of the road within the active channel of the Stehekin River.

5. The entire Stehekin River lies within National Park-protected land, from its source in Cascade Pass to its mouth at the head of Lake Chelan, from the crest of the Cascades to the third-deepest lake in North America. The Stehekin River is a remarkable, wild river, crystalline and cold, flowing through a deep narrow valley below glaciated peaks. It is filled with several species of trout, as well as kokanee salmon that spawn in its gravel beds in the fall. Harlequin ducks and numerous other waterfowl abound in it, and bald and golden eagles live along it. It provides a large fraction of the water that supplies Lake Chelan. Hikers and anglers come from all over the world to walk along it and fish in it.

6. A prior Park Service decision issued in March 2026 applied a categorical exclusion to NEPA's environmental review requirements for a previous, fundamentally different proposal for the Company Creek Road Project. The Park Service justified that exclusion on the ground that no work would be done within the channel of the Stehekin River. Based on this categorical exclusion decision, the Park



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

Service reconstructed a washed-out segment of the Company Creek Road in the Stehekin Valley, adjacent to the Stehekin River.

7. The currently proposed Company Creek Road Project involves constructing approximately 300–350 linear feet of road within the existing river channel, dewatering the river in this area, rechanneling of the river to the north, installing approximately 700 feet of riprap bank armoring, and reworking the west end of the newly constructed temporary road to connect with the proposed in-river road segment.

8. The Park Service's August 28, 2026 decision authorizes Chelan County to begin work within the Stehekin River channel. On information and belief, Chelan County intends to begin work within the Stehekin River channel as soon as this week (on or about September 15, 2026).

9. The Park Service's August 28, 2026 decision misapplied categorical exclusions to NEPA's requirements for environmental review, failed to adequately consider extraordinary circumstances that prevent application of the categorical exclusions to NEPA requirements, was issued before completion of the required consultation the United States Fish and Wildlife Service regarding the effects of the Project on threatened and endangered species, and violated the Park Service's own management polices and director's orders regarding resource protection and floodplain management.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

10. The Park Service's August 28, 2026 approval of the Company Creek Road Project references a "NPS Director's Decision Memorandum signed 8/24/26" which the Park Service characterizes as waiving protections afforded to the Stehekin River under the Wild and Scenic Rivers Act and Park Service management policies and director's orders, but this purported August 24, 2026 "Director's Decision Memorandum" has not been made publicly available and does not appear on the Park Service's list of documents related to the August 28, 2026 approval of the Company Creek Road Project.

11. This action seeks judicial relief with respect to the National Park Service's August 28, 2026 decision to approve of the Company Creek Road Project (and, to the extent applicable, the "NPS Director's Decision Memorandum signed 8/24/26"), ordering the Park Service to comply with the requirements of federal law, including the Park Service's Organic Act, NEPA, and the APA. The Park Service's decision was arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

12. Plaintiff requests that the Court set aside the Park Service's August 28, 2026 decision to approve of the Company Creek Road Project pursuant to 5 U.S.C. § 706(2)(a) and enjoin its implementation.

13. Plaintiff seeks a declaratory judgment, preliminary and final injunctive relief, an award of costs and expenses of suit, including attorney and expert witness



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and such other relief as this Court deems just and proper.

## II. JURISDICTION

14. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States and involves the United States as a defendant.

15. This Court has the authority to review the action(s) of the Park Service complained of herein pursuant to the APA, 5 U.S.C. §§ 701–706.

16. Any and all available administrative remedies have been exhausted.

17. Defendants' issuance of the August 28, 2026 decision to approve of the Company Creek Road Project was the final administrative action of the Park Service. Thus, the Court has jurisdiction to review plaintiff's claims under the Administrative Procedure Act (APA).

## III. VENUE

18. Venue is proper in this Court under 28 U.S.C. § 1391. All or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district and the agency records in question are located in this district.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

## IV. PARTIES

19. Plaintiff North Cascades Conservation Council (NCCC) is a non-profit public interest organization incorporated in 1957 and dedicated to preserving the scenic, scientific, recreational, educational, and wilderness values of the North Cascades. Its registered office is located in Seattle. Plaintiff brings this action on its own behalf and on behalf of its adversely affected members, who regularly recreate on and in the water and lands affected by Park Service's August 28, 2026 decision to approve of the Company Creek Road Project. Several of NCCC's members live in or adjacent to areas that will be adversely affected by that decision.

20. Defendant Jason J. Taylor is named in his official capacity as Superintendent of the North Cascades National Park Service Complex, headquartered in Sedro-Woolley, a unit of the National Park System administered by the Park Service and the Department of Interior. Superintendent Taylor signed the August 28, 2026 decision to approve of the Company Creek Road Project and is, along with Acting Park Service Director Jessica Bowron, the federal official with responsibility for the Park Service's actions and inactions alleged in this complaint.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

21. Defendant Jessica Bowron is named in her official capacity as acting director of the National Park Service.[1] Acting Director Bowron purportedly signed the "NPS Director's Decision Memorandum signed 8/24/26" which the Park Service characterizes as waiving protections afforded to the Stehekin River under the Wild and Scenic Rivers Act and Park Service management policies and director's orders. Acting director Bowron is, along with Superintendent Jason J. Taylor, the federal official with responsibility for the Park Service's actions and inactions alleged in this complaint.

22. Defendant National Park Service is an agency of the U.S. Department of the Interior with the responsibility for managing all units of the National Park System, including the North Cascades National Park Service Complex at issue in this case. The Park Service and its officers are responsible for compliance with all applicable laws, regulations, and policies at issue in this case.

23. Defendant Doug Burgum is named in his official capacity as Secretary of the United States Department of Interior. As Secretary, Mr. Burgum is the federal official ultimately responsible for the management and oversight of the National Park

---

[1] The Park Service variously describes Ms. Bowron's role as "Acting Director" and "Comptroller, Exercising the Delegated Authority of the Director."



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

System and for all Park Service official actions or inactions challenged in this complaint.

24. Defendant United States Department of the Interior is a department of the United States government with supervisory and managerial responsibility over the Park Service and is responsible for applying and implementing the federal laws, regulations, and policies at issue in this complaint.

## V. STATEMENT OF STANDING

25. The interests at stake in this matter are germane to the organizational purposes of North Cascades Conservation Council. The Park Service's violations of law as set forth in plaintiff's claims for relief threaten the Stehekin River, the fish and wildlife that rely on the Stehekin River, and the natural integrity of the North Cascades National Park Service Complex environment surrounding the Stehekin River.

26. The Park Service's August 28, 2026 decision to approve of the Company Creek Road Project would cause invasion of actual concrete interests of the members of North Cascades Conservation Council. North Cascades Conservation Council's individual members who live and own property; study and observe birds, fish, and other wildlife; enjoy boating and angling; and enjoy diverse recreational activities on and in the Stehekin River and on land that is adjacent to and near the Stehekin River and the Company Creek Road Project and expect to continue to do



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

so in the future. The incompatibility of the Company Creek Road Project with NCCC's members' use and enjoyment of the area would cause specific and concrete injuries to North Cascades Conservation Council's organizational interests, as well as its members' use and enjoyment of their homes and the surrounding natural environment, including the Stehekin River in the vicinity of the Company Creek Road Project.

27. The Company Creek Road Project involves constructing approximately 300 to 350 linear feet of road within the existing river channel, dewatering the river in this area, rechanneling of the river to the north, installing 700 feet of riprap bank armoring, and reworking the west end of the newly constructed temporary road to connect with the proposed in-river road segment.

28. North Cascades Conservation Council's and its members' aesthetic, recreational, scientific, educational, residential, and other interests have been and will continue to be adversely affected and irreparably injured if the Park Service continues to act and fail to act as alleged herein by authorizing and implementing the Company Creek Road Project as planned. These are actual, concrete, particularized injuries caused directly by the Park Service's failure to comply with its duties as mandated by the APA, the Park Service's Organic Act and its implementing regulations; the Park Service's regulations and management policies; and NEPA and



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

its implementing regulations. If granted, North Cascades Conservation Council's prayed-for relief will redress these injuries.

## VI. FACTUAL ALLEGATIONS

29. Plaintiff restates and incorporates by reference all preceding paragraphs.

30. The entire Stehekin River lies within National Park-protected land, from its source in Cascade Pass to its mouth at the head of Lake Chelan, from the crest of the Cascades to the third-deepest lake in North America.

31. The Stehekin River has meandered throughout the lower Stehekin Valley since time immemorial, routinely changing its course (or "migrating") across the floodplain. According to the "Lake Chelan NRA includes approximately 417 acres of private land, much of which lies within the floodplain and channel migration zone of the Stehekin River. (The channel migration zone is where the river has historically migrated in the valley over the past 1,000 years.)"

32. The entire Stehekin River, including the reach of the river that would be directly and adversely affected by the proposed Company Creek Road Project, is eligible for designation and inclusion in our Nation's Wild and Scenic Rivers system as a "Wild," "Scenic," or "Recreational" river, depending on the segment of the river.

33. The Stehekin River's eligibility for inclusion in our Nation's Wild and Scenic Rivers system is due, in part, to its "free-flowing condition" and



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

"outstandingly remarkable values," including wildlife, fish, prehistoric, historic, geologic, scenic and recreational resources.

34. The eligibility finding for the Stehekin River constrains Park Service management actions that could potentially affect the river's "free-flowing" characteristics or the various "Outstandingly Remarkable Values" that contribute to its eligibility. In accordance with guidance from the Interagency Wild and Scenic Rivers Coordinating Council, and Section 4.3.4 of the Park Service's Management Policies (relating to the Wild and Scenic Rivers Act), the Park Service must avoid taking management actions that would adversely affect the "Free-flowing Condition" and "Outstandingly Remarkable Values" that qualify the river for inclusion in the National Wild and Scenic Rivers System.

35. A major flooding event in December 2025 destroyed a portion of Company Creek Road and changed the course of the Stehekin River so that the river now freely flows over the former location of the road. Homeowners upriver from the portion of the destroyed road lost vehicle access, but local residents have since created a de facto road across the approximately 200-foot gap between existing road sections that has been used by residents, emergency responders, and the public.

36. In the spring of 2026, the Park Service developed a plan for emergency temporary road construction to restore vehicle access to the homeowners on upper Company Creek Road. As part of that planning effort in early 2026, the Park Service



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

applied a "categorical exclusion" under NEPA, which allowed it to proceed with the road construction without undergoing the environmental analysis normally required under NEPA (*i.e.*, without completing an Environmental Assessment or Environmental Impact Statement).

37. The Park Service's justification for applying that categorical exclusion in early 2026 included that: "Construction within the river will be avoided." As proposed and contemplated in early 2026, the road reconstruction would run along (and set back from) the southerly bank of the Stehekin River.

38. Construction of the emergency temporary road along the southerly bank of the Stehekin River commenced in April 2026.

39. As of mid-June 2026, NPS (in conjunction with the U.S. Army Corps of Engineers) installed or repaired 1,500 linear feet of temporary road to serve as emergency/interim access, using 12,500 tons of rock, at a cost to taxpayers between $3 million and $4 million.

40. But the road construction ran into a problem when it was near completion. The Park Service had to cross a short section (approximately 200 feet) of private property to reconnect the emergency temporary road with the still-existing portion of Company Creek Road upriver from the flooded area, as shown in the following image prepared by the Park Service:



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600




41. Once the "recently constructed, new alignment road" shown in the image above was built to the private property boundary, the landowner declined to allow road access through his property.

42. It is unknown to plaintiff how or why the Park Service failed to account for the need to cross private property before constructing the majority of the road.

43. The landowner's refusal to allow the road to cross a portion of property resulted in a rushed, flawed, and inadequate process to find a new, alternative location to bridge the approximately 200-foot gap in the road.



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

44. The Park Service issued a Special Use Permit ("SUP") to Chelan County on August 28, 2026 to construct a road segment to fill the "gap" created by the private landowner's refusal to allow the completion of the Company Creek Road as proposed in the spring of 2026. The County signed the SUP on September 3, 2026. Work by Chelan County and contractors is expected to begin mid-September with a projected completion date in early-October.

45. The Park Service decided to put 300–350 feet of road within the channel of the Stehekin River, despite basing its spring 2026 Categorical Exclusion on a promise that "Construction within the river will be avoided."

46. Placing 300–350 feet of the road within the channel of the Stehekin River would require "dewatering the river in this area, rechanneling of the river to the north, and reworking the west end of the newly constructed temporary road to connect with the proposed in-river road segment."

47. According to the Park Service's August 28, 2026 decision: "Dewatering" of the Stehekin River in the vicinity of the Project would last "up to three months."

48. According to the Park Service's August 28, 2026 decision: The Project would or could "affect approximately 236 acres of floodplain."

49. The rushed new plan for putting the road in the Stehekin River would involve an extraordinary amount of alteration to the river and its bed and banks that



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

were not required by the Project as proposed in the spring of 2026. A visual summary of that extensive alteration of the Stehekin River was circulated by the Washington Department of Fish and Wildlife ("WDFW") with WDFW staff comments added in red text to a plan of the currently-proposed Project:




50. WDFW staff conducted a field visit to the Project site on September 8, 2026. The "field notes" prepared from that site visit include the following observations, quoted verbatim from the WDFW staff field notes:

- WDFW staff saw an estimated 400-500 Kokanee salmon, counting at least 40-50 active redds within the project footprint. These numbers are



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

expected to increase during construction when the Kokanee will be in their peak spawning time.

- Majority of redds were immediately upstream and downstream of planned active construction. However, there were still a lot of redds and fish in the project area on both banks and in small side channel on river right.
- River right bank had pools, undercut banks, root wads, vegetation-good rearing habitat.
- River left bank had spawning habitat and lots of redds.
- Far left bank in the dry will have impacts to riparian vegetation and undercut banks as a result of the placed excavated fill.
- Lots of wood in the stream downstream of project area, but not much currently in project footprint.
- Limited available wood for incorporating into the project.
- Bank revetment will destroy spawning and rearing habitat and eliminate riparian vegetation, rootwads, pools. These features provide a critical function of dissipating the rivers energy.

51. The road construction, unless enjoined by the Court, is anticipated to begin in early-to-mid September 2026, during peak spawning for Kokanee salmon.



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

52. The Park Service's Categorical Exclusions for the Project do not address Kokanee salmon, nor are Kokanee salmon mentioned anywhere in the Park Service's August 28, 2026 decision. That is a significant omission regarding the natural resources at risk because of the Project and indicative of the Service's lack of adequate review of the Project.

53. While the Park Service considers bull trout (a listed species under the ESA and State of Washington) to be extirpated in the Stehekin River, the Washington Department of Fish and Wildlife consider bull trout to persist in the watershed and the Stehekin River is potential habitat.

54. The Park Service's rushed, flawed, and inadequate process for changing the Project to place the road within the Stehekin River included reference to a purported "NPS Director's Decision Memorandum signed 8/24/26," which the agency asserts "waived Management Policies [sic] 4.3.4 (relating to the Wild and Scenic Rivers Act)" and waived "Director's Order 77-2" relating to floodplain management.

55. The Park Service has not made a copy of the purported "NPS Director's Decision Memorandum signed 8/24/26" available to the public. Upon information and belief, no such memorandum is available on the Park Service website or elsewhere for review by plaintiff or the general public.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

56. According to the Park Service's August 28, 2026 decision: "Since a hydraulic model has not been completed to understand and quantify the hydraulic impacts of the proposed action, this creates uncertainty in the success or potential negative consequences of the proposed action[.]"

57. The Park Service applied Categorical Exclusions to avoid the analysis of direct, indirect, and cumulative environmental impacts that an agency action like this Project would normally require under NEPA.

58. Otherwise applicable categorical exclusions are not available to shield a project from environmental review under NEPA if specified extraordinary circumstances exist. Such extraordinary circumstances are listed at 43 C.F.R. § 46.215 and include whether the agency action would:

a. "Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands; floodplains; national monuments; migratory birds; and other ecologically significant or critical areas." 43 C.F.R. § 46.215(b).



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

b. "Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks." 43 C.F.R. § 46.215(c).

c. "Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects." 43 C.F.R. § 46.215(d).

d. "Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have significant impacts on designated Critical Habitat for these species." 43 C.F.R. § 46.215(g).

59. The Park Service determined, during its rushed, flawed, and inadequate process to relocate the road into the active channel of the Stehekin River, that none of these extraordinary circumstances apply to this Project.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATIONS OF THE PARK SERVICE'S ORGANIC ACT AND ITS IMPLEMENTING REGULATIONS AND THE PARK SERVICE'S REGULATIONS AND MANAGEMENT POLICIES

60. Plaintiff restates and incorporates by reference all preceding paragraphs.

61. The reach of the Stehekin River that would be affected by the Project is within the Lake Chelan National Recreation Area.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

62. The National Park Service includes many different types of parks, like National Parks, National Recreation Areas, National Battlefields, and National Historic Sites. They all belong to the same National Park System. So, even though the Lake Chelan National Recreation Area does not have "National Park" in its name, it is considered and managed as a national park.

63. National Recreation Areas are designed to balance conservation with recreation, providing spaces for activities like boating, fishing, hiking, and picnicking, while still protecting the natural environment.

64. "The Secretary, acting through the Director of the National Park Service, shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C.A. § 100101(a).

65. "The authorization of activities shall be construed and the protection, management, and administration of the System units shall be conducted in light of the high public value and integrity of the System and shall not be exercised in derogation of the values and purposes for which the System units have been



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

established, except as directly and specifically provided by Congress." 54 U.S.C. § 100101(b)(2).

66. Building the Company Creek Road in the channel of the Stehekin River does not conserve the scenery, natural and historic objects, and wild life in the Lake Chelan National Recreation Area, nor does it provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations, in violation of 54 U.S.C.A. § 100101(a) and (b)(2).

67. The Park Service's authorization for building Company Creek Road in the channel of the Stehekin River was exercised in derogation of the values and purposes for which the National Park System units have been established and contrary to Congressional intent.

68. The Lake Chelan National Recreation Area was established by Congress in 1968 "to provide for the public outdoor recreation use and enjoyment of portions of the Stehekin River and Lake Chelan, together with the surrounding lands, and for the conservation of the scenic, scientific, historic, and other values contributing to public enjoyment of such lands and waters[.]" 16 U.S.C. § 90a-1.

69. "The Secretary [of the Interior] shall administer the recreation areas in a manner which in his judgment will best provide for (1) public outdoor recreation benefits and (2) conservation of scenic, scientific, historic, and other values



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

contributing to public enjoyment. Within that portion of the Lake Chelan National Recreation Area which is not designated as wilderness, such management, utilization, and disposal of renewable natural resources and the continuation of existing uses and developments as will promote, or are compatible with, or do not significantly impair public recreation and conservation of the scenic, scientific, historic, or other values contributing to public enjoyment, are authorized. In administering the recreation areas, the Secretary may utilize such statutory authorities pertaining to the administration of the national park system, and such statutory authorities otherwise available to him for the conservation and management of natural resources as he deems appropriate for recreation and preservation purposes and for resource development compatible therewith." 16 U.S.C. § 90c-1.

70. Building the Company Creek Road in the channel of the Stehekin River does not provide for or promote public outdoor recreation benefits or conservation of scenic, scientific, historic, and other values contributing to public enjoyment and violates 16 U.S.C. § 90c-1.

71. Building the Company Creek Road in the channel of the Stehekin River, especially during the height of Kokanee spawning, is not compatible with and significantly impairs public recreation and conservation of the scenic, scientific, historic, or other values contributing to public enjoyment and violates 16 U.S.C. § 90c-1.



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

72. According to the Park Service's website2 describing its "Management Policies," lands within the National Park System "are places that offer renewal for the body, the spirit and the mind. As required by the 1916 Organic Act, these special places must be managed in a special way—a way that allows them to be enjoyed not just by those who are here today, but also by generations that follow. Enjoyment by present and future generations can be assured only if these special places are passed on to them in an unimpaired condition. And that is the challenge that faces all the employees of the National Park Service."

73. Building the Company Creek Road in the channel of the Stehekin River would impair the Lake Chelan National Recreation Area's scenic, scientific, historic, and other values contributing to public enjoyment, not pass them on to future generations in an unimpaired condition.

74. Park Service Management Policy 1.4.3 states in relevant part: "The fundamental purpose of the national park system, established by the Organic Act and

---

[2] *Available at*: https://www.nps.gov/subjects/policy/management-policies.htm, *last visited* September 13, 2026. A complete list of National Park Service Management Policies is *available at*: https://www.nps.gov/subjects/policy/upload/MP_2006_amended.pdf, *last visited* September 13, 2026.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

reaffirmed by the General Authorities Act, as amended, begins with a mandate to conserve park resources and values. This mandate is independent of the separate prohibition on impairment and applies all the time with respect to all park resources and values, even when there is no risk that any park resources or values may be impaired. NPS managers must always seek ways to avoid, or to minimize to the greatest extent practicable, adverse impacts on park resources and values."

75. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service failed to seek ways to avoid, or to minimize to the greatest extent practicable, adverse impacts on park resources and values, violating the letter and intent of Park Service Management Policy 1.4.3.

76. Park Service Management Policy 1.4.3.1 states in relevant part: "In the administration of authorized uses, park managers have the discretionary authority to allow and manage the use, provided that the use will not cause impairment or unacceptable impacts. In determining whether or how to allow the use, park managers must consider the congressional or presidential interest, as expressed in the enabling legislation or proclamation, that the use or uses continue. Where there is strong public interest in a particular use, opportunities for civic engagement and cooperative conservation should be factored into the decision-making process."

77. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service failed to ensure that the use will not cause



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

impairment or unacceptable impacts. Even though there is strong public interest in protecting the natural and scenic values of the Stehekin River, the Park Service did not provide opportunities for civic engagement and cooperative conservation. On the contrary, the Park Service heavily relied on the purported "NPS Director's Decision Memorandum signed 8/24/26," which was apparently issued in secret and is still not available for review by the plaintiff or the public. For those reasons, the Park Service violated the letter and intent of Park Service Management Policy 1.4.3.1.

78. Park Service Management Policy 1.4.4 ("The Prohibition on Impairment of Park Resources and Values") states in full: "While Congress has given the Service the management discretion to allow impacts within parks, that discretion is limited by the statutory requirement (generally enforceable by the federal courts) that the Park Service must leave park resources and values unimpaired unless a particular law directly and specifically provides otherwise. This, the cornerstone of the Organic Act, establishes the primary responsibility of the National Park Service. It ensures that park resources and values will continue to exist in a condition that will allow the American people to have present and future opportunities for enjoyment of them. The impairment of park resources and values may not be allowed by the Service unless directly and specifically provided for by legislation or by the proclamation establishing the park. The relevant legislation or proclamation must provide explicitly (not by implication or inference) for the activity, in terms that keep



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

the Service from having the authority to manage the activity so as to avoid the impairment."

79. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service clearly and egregiously violated Management Policy 1.4.4.

80. Pursuant to Park Service Management Policy 1.4.5 impacts that cause the "impairment" prohibited by Policy 1.4.4 are impacts that would "harm the integrity of park resources or values . . . Whether an impact meets this definition depends on the particular resources and values that would be affected; the severity, duration, and timing of the impact; the direct and indirect effects of the impact; and the cumulative effects of the impact in question and other impacts."

81. Park Service Management Policy 1.4.6 defines the term "park resources or values" used in Policy 1.4.5, stating in part: "The 'park resources and values' that are subject to the no-impairment standard include the park's scenery, natural and historic objects, and wildlife, and the processes and conditions that sustain them, including, to the extent present in the park: the ecological, biological, and physical processes that created the park and continue to act upon it; scenic features; natural visibility, both in daytime and at night; natural landscapes; natural soundscapes and smells; water and air resources; soils; geological resources; paleontological resources; archeological resources; cultural landscapes; ethnographic resources;



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

historic and prehistoric sites, structures, and objects; museum collections; and native plants and animals[.]"

82. Here, the road construction within the channel of the Stehekin River is proposed to occur during the height of the Kokanee salmon spawning season, in a part of the river where WDFW staff observed on September 8, 2026 "an estimated 400-500 Kokanee salmon, counting at least 40-50 active redds within the Project footprint. These numbers are expected to increase during construction when the Kokanee will be in their peak spawning time." Thus, the road construction in the river channel would impair wildlife and the processes and conditions that sustain them. It would also impair the ecological and physical processes that created the park and continue to act upon it, by constraining the free-flowing Stehekin River in a manufactured channel and armoring its banks to prevent the meandering and migration of the river across the valley floor that has occurred since time immemorial. For all of those reasons, the Park Service violated Management Policies 1.4.5 and 1.4.6.

83. Park Service Management Policy 2.3.1.9 states in relevant part: "The Park Service will compile a complete listing of all rivers and river segments in the national park system that it considers eligible for the National Wild and Scenic Rivers System. General management plans and other plans potentially affecting river



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

resources will propose no actions that could adversely affect the values that qualify a river for the National Wild and Scenic Rivers System."

84. Park Service Management Policy 4.3.4 states in relevant part: "No management actions may be taken that could adversely affect the values that qualify a river for inclusion in the National Wild and Scenic Rivers System."

85. The August 28, 2026 decision of the Park Service challenged in this action states: "Per the NPS Director's Decision Memorandum signed 8/24/26, given the nature of the proposed work, building within the river channel, there is some possibility of adversely affecting values that qualify the river for inclusion as a Wild and Scenic River. To achieve the expedited timeline of this project, the NPS Director has waived Management Policies [sic] 4.3.4 (relating to the Wild and Scenic Rivers Act), only to the extent necessary to complete emergency repairs to Company Creek Road." No mention is made of a waiver of Management Policy 2.3.1.9.

86. The Service's purported waiver of Management Policy 4.3.4 and failure to address Management Policy 2.3.1.9 violates the letter and intent of the Service's Management Policies.

87. The Introduction to the Park Service's Management Policies addressing "Natural Resource Management" states in relevant part: "The Service recognizes that natural processes and species are evolving, and the Service will allow this evolution to continue—minimally influenced by human actions." The first Management Policy



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

in this section, Policy 4.1, states: "The Service cannot conduct or allow activities in parks that would impact park resources and values to a level that would constitute impairment."

88. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service allowed activity that would impact park resources and values to a level that would constitute impairment, violating Management Policy 4.1.

89. In the Wild and Scenic Rivers Act, Congress declared: "It is hereby declared to be the policy of the United States that certain selected rivers of the Nation which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations." 16 U.S.C. 1271. This policy of the United States is reflected in Park Service Director's Order DO-46, which states: "Park river managers must protect rivers found to be eligible for WSR designation."

90. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service acted contrary to Congressional intent and violated Director's Order DO-46.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

91. Park Service Management Policy 4.6.4 states in relevant part: "In managing floodplains on park lands, the National Park Service will (1) manage for the preservation of floodplain values; . . . Specifically, the Service will protect, preserve, and restore the natural resources and functions of floodplains; avoid the long- and short-term environmental effects associated with the occupancy and modification of floodplains; and avoid direct and indirect support of floodplain development and actions that could adversely affect the natural resources and functions of floodplains or increase flood risks."

92. Park Service Management Policy 4.6.6 states in full: "The Service will manage watersheds as complete hydrologic systems and minimize human-caused disturbance to the natural upland processes that deliver water, sediment, and woody debris to streams. These processes include runoff, erosion, and disturbance to vegetation and soil caused by fire, insects, meteorological events, and mass movements. The Service will manage streams to protect stream processes that create habitat features such as floodplains, riparian systems, woody debris accumulations, terraces, gravel bars, riffles, and pools. Stream processes include flooding, stream migration, and associated erosion and deposition. The Service will protect watershed and stream features primarily by avoiding impacts on watershed and riparian vegetation and by allowing natural fluvial processes to proceed unimpeded. When conflicts between infrastructure (such as bridges and pipeline crossings) and stream



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

processes are unavoidable, NPS managers will first consider relocating or redesigning facilities rather than manipulating streams. Where stream manipulation is unavoidable, managers will use techniques that are visually nonobtrusive and that protect natural processes to the greatest extent practicable.

93. In authorizing the building of Company Creek Road in the channel of the Stehekin River, the Park Service violated Management Policy 4.6.6 by, *inter alia*, failing manage streams to protect stream processes that create habitat features such as floodplains, riparian systems, woody debris accumulations, terraces, gravel bars, riffles, and pools. Indeed, the Project would destroy those habitat features. The Service also violated Policy 4.6.6 by failing to protect watershed and stream features, by failing to allow natural fluvial processes to proceed unimpeded, and by failing to use techniques that are visually nonobtrusive and that protect natural processes to the greatest extent practicable.

94. Numerous other Park Service planning and guidance documents, including but not limited to the Lake Chelan National Recreation Area Land Protection Plan (NPS 1995b) and the 2012 Stehekin River Corridor Implementation Plan and Final Environmental Impact Statement, require the Park Service to allow natural channel migration and avoid structural river manipulation. In authorizing the building of Company Creek Road in the active channel of the Stehekin River, the



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

Park Service ignored and violated its own planning and guidance documents and failed to consider and apply best available science.

95. Defendants' actions are arbitrary, capricious, not in accordance with law, and taken without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

**SECOND CLAIM FOR RELIEF**

**VIOLATIONS OF NEPA:**
**Failure to Adequately Disclose and Analyze Environmental Impacts as Required by NEPA**

96. Plaintiff restates and incorporates by reference all preceding paragraphs.

97. NEPA is a procedural statute that requires federal agencies to take a hard look at the environmental consequences of the proposed action using the best available scientific information. An agency complies with NEPA's hard look requirement if the procedure followed by the agency resulted in a reasoned analysis of the evidence before it. NEPA mandates that the disclosure of high quality information detailing the environmental impacts of the Proposed Action be made available to public officials and citizens before actions are taken.

98. The Park Service failed to take a hard look at the environmental consequences of its August 28, 2026 approval of the Company Creek Road Project.

99. The Park Service's failure to take the required "hard look" was likely due in part to the Service's rushed process to come up with an alternative location



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

for the Company Creek Road after a private landowner denied permission to complete the road in the location proposed in the spring of 2026.

100. The Park Service's failure to take the required "hard look" was likely also due to the agency's erroneous application of Categorical Exclusions pursuant to 43 C.F.R. § 46.205 and 46.210 without adequate consideration of the extraordinary circumstances that prohibit applying those Categorical Exclusions if the project "may meet" any of the criteria listed at 43 C.F.R. § 46.215. *See* 43 C.F.R. § 46.205(c)(1) ("Any action that is normally categorically excluded must be evaluated to determine whether it meets any of the extraordinary circumstances in § 46.215; if it does, further analysis and environmental documents must be prepared for the action.").

101. The Park Service's evaluation of whether the Project may meet any of the extraordinary circumstances in § 46.215 was cursory at best. As a single nonexclusive example, one extraordinary circumstance barring the application of Categorical Exclusions is whether the project may have: "significant impacts on such natural resources and unique geographic characteristics as . . . park, recreation or refuge lands; . . . wild or scenic rivers; . . . floodplains; . . . and other ecologically significant or critical areas." 40 C.F.R. 46.215(b). Building the Company Creek Road within the active channel of the Stehekin River not only may have, but will have, significant impacts on those natural resources and unique geographic characteristics. But the Park Service asserted that these impacts are not significant because, *inter*



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

*alia*, "this work re-establishes the existing condition of the river prior to the 2025 flood event" and "NPS Management Policies requiring that eligible rivers be managed as if designated [as a Wild and Scenic River] have been waived." The work proposed in the active channel of the Stehekin River does not restore the pre-2025 condition of the river, it drastically alters it as the image above at paragraph 49 shows.

102. The Park Service lacked information needed to assess the likely environmental impacts of the proposed action and determine whether extraordinary circumstances are present. For example, the Park Service has not completed the consultation with the U.S. Fish and Wildlife Service ("USFWS") nor obtained a concurrence from USFWS regarding the Park Service's initial determination that the Project "may affect, but is not likely to adversely affect" "species listed, or proposed to be listed, on the List of Endangered or Threatened Species, or . . . critical habitat for these species." 43 C.F.R. § 46.215(g). Without completing the consultation process with USFWS, the Park Service lacked crucial information regarding the Project's likely impacts on fish and wildlife.

103. Nor did the Park Service consider (or even mention) the presence of several hundred Kokanee salmon and dozens of salmon redds within the Project site, or discuss or analyze the impacts of engaging in this massive construction project in the active channel of the river, involving dewatering of the river, during the height of Kokanee spawning season.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

104. Defendants failed to adequately consider alternatives to the proposed action, including but not limited to a land-based route for the reconstructed road.

105. Defendants' actions violate NEPA and its implementing regulations.

106. Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully prays that the Court grant the following relief:

A. Order, declare, and adjudge that the defendants have violated the APA; the Park Service's Organic Act and its implementing regulations; the Park Service's regulations and management policies; and NEPA and its implementing regulations as set forth above;

B. Issue a preliminary and final order enjoining the defendants from implementing the Company Creek Road Project as currently planned and enjoining other federal, state, and local agencies from relying on the Park Service's August 28, 2026 decision to authorize activity that would impact the Stehekin River;

C. Order the defendants to comply with the APA; the Park Service's Organic Act and its implementing regulations; the Park Service's regulations and management policies; and NEPA and its implementing regulations;



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

D. Order the defendants to withdraw the August 28, 2026 approval of the Company Creek Road Project and the purported "NPS Director's Decision Memorandum signed 8/24/26";

E. Award the plaintiff its costs, litigation expenses, expert witness fees, and reasonable attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act and all other applicable authorities; and

F. Grant plaintiff any such further relief as may be just, proper, and equitable.

Dated this 15th day of September, 2026.

Respectfully submitted by counsel for North Cascades Conservation Council,

BRICKLIN & NEWMAN, LLP

By: *s/ Zachary Griefen*
Claudia Newman, WSBA No. 24928
Zachary Griefen, WSBA No. 48608
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel: (206) 264-8600
Email: newman@bnd-law.com
griefen@bnd-law.com