The Honorable John H. Chun

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORTH CASCADES CONSERVATION COUNCIL, a nonprofit organization,<br><br>Plaintiff,<br><br>v.<br><br>JASON J. TAYLOR, in his official capacity as Superintendent of the North Cascades National Park Service Complex; JESSICA BOWRON, in her official capacity as Acting Director of the National Park Service; the NATIONAL PARK SERVICE; DOUG BURGUM, in his official capacity as Secretary of the United States Department of Interior; and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants. | NO. 2:26-CV-03318-JHC<br><br>DECLARATION OF JONATHAN B. JARVIS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER |

**DECLARATION OF JONATHAN B. JARVIS**

Pursuant to 28 USC § 1746, and under penalty of perjury, I, JONATHAN B. JARVIS, declare that the following is true and correct:

1. I am over the age of 18 and competent to testify in this matter.

2. The facts set forth in this declaration are based upon my personal and professional knowledge, and if called as a witness in this proceeding, I could and would testify competently thereto



Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

under oath. As to those matters that reflect an opinion, they reflect my personal and professional opinion on the matter.

3. I served with the National Park Service (the "Park Service" or "NPS") for 40 years, from 1976 to 2017. My decades of experience with the Park Service spanned a variety of roles, including park ranger, park biologist, superintendent of multiple parks, and regional director. In 2009, I was nominated by President Barack Obama to serve as Director of the National Park Service. I held that role from my confirmation in October 2009 until January 2017.

4. Prior to serving as the Director of the Park Service, I served as the Regional Director of the Pacific West Region of the NPS, overseeing, among other parks, the North Cascades National Park Complex.

5. From 1986 to 1991, I served as the Chief of Natural and Cultural Resources at North Cascades National Park Complex, administering a variety of projects designed to protect the park natural resources, and to apply the best available science to decision making. Specifically, I was directly involved in writing and completing the park's General Management Plan and Environmental Impact Statement, completed in 1988. During this time, I was also directly involved in management issues in Stehekin, including proposals to mitigate annual flooding and impact to the Stehekin roads and private properties.

6. During my time with the NPS, including my term as Director, I gained extensive experience in the preparation, public involvement, alternative evaluation and decision making in the application of the National Environmental Policy Act ("NEPA") to NPS resources and projects.

7. During my time with the NPS, including my term as Director, I gained extensive experience in interpreting and applying the Park Service's Organic Act, regulations, Director's Orders, and Management Policies to NPS resources and projects.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

8. I am familiar with the Park Service's recent decision to authorize road construction within the active channel of the Stehekin River. I have reviewed the complaint filed by North Cascades Conservation Council challenging that decision.

9. The purpose of this declaration is to share my experience, knowledge, and professional opinion with respect to past projects in the North Cascades National Park Complex and my expertise with respect to the need for—and the standard practice of preparing—environmental review documents pursuant to the National Environmental Policy Act ("NEPA") in connection with projects carried out by the NPS and by other entities on lands and resources under the stewardship of the NPS.

10. I understand that the Park Service purported to waive some, but not all, applicable Director's Orders and Management Policies that are intended to protect the North Cascades National Park Complex and the Stehekin River within the Park Complex for the enjoyment of future generations.

11. Based upon my expertise and experience, it is my opinion that the Acting Director Bowron's purported waiver of the protections afforded to the Stehekin River under the Wild and Scenic Rivers Act and Park Service Management Policies and Director's Orders is deficient for several reasons, as further explained below.

12. I understand that the Park Service applied so-called "categorical exclusions" to avoid the requirement to prepare environmental review documents pursuant to NEPA.

13. Based upon my expertise and experience, it is my opinion that the Park Service's application of categorical exclusions under NEPA is deficient for several reasons, as further explained below.



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

14. The North Cascades National Park Complex was established by legislative act of Congress and signed into law by President Lyndon Johnson in October of 1968. The "complex" consists of three individual units of the NPS with slightly different names and enabling legislation: North Cascades National Park, Ross Lake National Recreation Area and Lake Chelan National Recreation Area (NRA). The project before the court involving the Stehekin River is wholly within Lake Chelan NRA.

15. Lake Chelan NRA was designated a NRA rather than a National Park because of public input and recognition that there were private lands and residents within the Stehekin valley and the NPS would need some flexibility in its regulations and policies to allow for the continuation of these residents. The NPS did acquire some of the private lands that were identified as critical to conservation and/or public access and enjoyment of the NRA.

16. The designation as a NRA does not lower the NPS standards of conservation and public enjoyment of the lands and resources under the stewardship of the NPS. The NPS General Authorities Act of 1970 states: *Congress declares that the National Park Service, which began with establishment of Yellowstone National Park in 1872, has since grown to include superlative natural, historic, and recreation areas in every major region of the United States, its territories and island possessions; that these areas, though distinct in character, are united through their inter-related purposes and resources into one national park system as cumulative expressions of a single national heritage; that, individually and collectively, these areas derive increased national dignity and recognition of their superb environmental quality through their inclusion jointly with each other in one national park system preserved and managed for the benefit and inspiration of all the people of the United States; and that it is the purpose of this Act to include all such areas in the System and to clarify the authorities applicable to the system*



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

17. The three units of the North Cascades National Park Complex are managed in accordance with the NPS Organic Act, NPS Management Policies and Director's Orders.

18. During my 40 years with the National Park Service, I was involved with the management of North Cascades National Park Service Complex for 20 of those years. Proposals to protect public access, the Stehekin Valley and Company Creek road, park facilities and private lands were common and often controversial. Extensive research and assessments were made to identify a range of alternatives in how to protect these assets while minimizing the direct impact to the Stehekin River itself. To my knowledge, the NPS has never permitted nor allowed the redirection of the river itself, but has allowed some bank hardening to prevent erosion.

19. The entire Stehekin River, from its source in Cascade Pass to its mouth at the head of Lake Chelan, lies within National Park-protected North Cascades National Park Complex. The Stehekin River has meandered throughout the lower Stehekin Valley since time immemorial, routinely changing its course (or "migrating") across the floodplain. The entire Stehekin River, including the reach of the river that would be directly and adversely affected by the proposed Company Creek Road Project, is eligible for designation and inclusion in our nation's Wild and Scenic Rivers system as a "Wild," "Scenic," or "Recreational" river, depending on the segment of the river.

20. The Stehekin River's eligibility for inclusion in our Nation's Wild and Scenic Rivers system is due to its "free-flowing condition" and "outstandingly remarkable values," including wildlife, fish, prehistoric, historic, geologic, scenic and recreational resources. Loss of, or harm to, the river's "free-flowing condition" and "outstandingly remarkable values" from the Company Creek Road Project would likely result in the river's loss of eligibility for designation



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

and inclusion in our Nation's Wild and Scenic Rivers system and loss of the protections that come with that eligible status.

21. Building the Company Creek Road within the active channel of the Stehekin River not only may have, but is highly likely to have, significant impacts on natural resources and unique geographic characteristics including park, recreation or refuge lands managed by the Park Service, the Stehekin River and its floodplain, and other ecologically significant or critical areas.

22. The pre-existing condition of the river is a naturally flowing river, providing habitat for spawning salmon and other species, that is free to migrate in the floodplain, as it has done for thousands of years.

23. The current proposal to re-route the river to allow reconstruction of the road is unprecedented.

24. The National Park Service "Organic Act" states: *the Director of the National Park Service, shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations*. (Title 54, USC 1)

25. The Organic Act was amended in 1978 to reaffirm the priority of non-impairment: *The authorization of activities shall be construed and the protection, management, and administration of these areas shall be conducted in light of the high public value and integrity of the National Park System and shall not be exercised in derogation of the values and purposes for which these various areas have been established, except as may have been or shall be directly and specifically provided by Congress (Title 54).*



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

26. In my professional opinion, the proposed rerouting of the Stehekin River to provide for the construction of a section of road is a violation of the NPS Organic Act non-impairment standard, and the derogation of a significant park resource has not been specifically authorized by Congress.

27. The Stehekin River has been determined by the NPS to be eligible for designation under the Wild and Scenic Rivers Act. In accordance with the Wild and Scenic Rivers Act, the NPS therefore must manage the river so as to retain its "outstanding remarkable values" (ORVs), until such time that Congress decides on its designation.

28. It is my professional opinion that the proposed manipulation of the river to construct a road will impact the ORV's of the Stehekin River and violate the provisions of the Wild and Scenic Rivers Act. Building a road in the active channel of the Stehekin River carries a significant risk that the river will never again be eligible for inclusion in our nation's Wild and Scenic River system.

29. The provisions of the Wild and Scenic Rivers Act cannot be waived through a Director's Memorandum.

30. In 2012, the National Park Service completed and issued the Stehekin River Corridor Implementation Plan and Final Environmental Impact Statement with a record of decision signed by the Regional Director on March 14, 2013. The ROD states: *Protecting the natural processes of the Stehekin River is an important goal which guides this implementation plan. Natural processes include channel migration, shoreline erosion and accretion, and recruitment and dispersal of woody and organic debris within the river. Preserving these processes will help protect the ecological integrity of the Stehekin River and its riparian zone and sustain public recreational use and enjoyment of Lake Chelan NRA.*



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

31. NPS Director's Order 12, which I signed as Director on October 5, 2011, and which has not been rescinded, provides guidance to the park superintendents on the implementation of the National Environmental Policy Act. This includes careful development of alternatives, analysis of environmental impacts, active public involvement, publicly available draft documents, and the preparation of either an Environmental Assessment or Environmental Impact Statement.

32. In this proposal, the NPS has issued "categorical exclusions" from further NEPA compliance which in my professional opinion is wholly inconsistent with the Director's Order 12.

33. The specific Record of Decision on how the Stehekin River is to be protected and managed in light of public access and the maintenance of the roads cannot be changed with a Categorical Exclusion. A project to relocate the river to protect private property is in direct contradiction of the Stehekin River Corridor Implementation Plan and Final Environmental Impact Statement and therefore requires the development of an Environmental Impact Statement, a consideration of alternatives and a new Record of Decision. The plan states: "*No new road construction would be proposed in active river / erosion conflict zones*" (page 5).

34. The Stehekin River Corridor Implementation Plan and Final Environmental Impact Statement noted that the River is highly dynamic, floods frequently, and is aggrading (accumulating gravel that raises its level causing the river to meander). The plan also notes that actions to harden the river in one location have downstream impacts, as the force of the river flow shifts back and forth. The NPS has failed to consider the downstream impacts of the proposal to public lands, facilities and other private lands. Without this analysis, the problem of bank erosion will just shift downstream and require additional work and impact to the river.

35. The Stehekin River Corridor Implementation Plan and Final Environmental Impact Statement recognizes that the river is dynamic and there are private lands within the floodplain. The



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600

plan provides for the acquisition of these lands from willing sellers, exchanges with other lands or even in rare circumstances condemnation of portions of the lands to provide for river protection. The NPS has not considered these alternatives to the proposed river manipulation.

36. As described in numerous NPS documents, the Stehekin River is a outstanding, free flowing natural river that is home to multiple aquatic species and the spawning ground for important recreational fish from Lake Chelan. The river and its contents are an essential component to the North Cascades ecosystem, providing habitat for water birds and hunting grounds for black bears and many other species. The river is also an essential component of the visitor experience in Lake Chelan NRA for fishing and observing nature.

37. The proposed re-routing of the Stehekin River is principally to provide access to private lands, when those private land owners have already constructed a road through their private lands. That de facto road requires improvement to withstand yearly fall and spring high water, but one private property owner has declined to allow NPS to do so. The NPS has inexplicably chosen to respond to this situation by violating its own statutory mandates, policies, and Director's orders, in an unprecedented impact to a critical park resource.

38. In my professional opinion, the proposed project is very likely to cause immediate and irreparable harm to the Stehekin River and to the people, fish, and wildlife that use and enjoy it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25 day of September, 2026, in Pinole, California.

BY: Jonathan B. Jarvis

**JONATHAN B. JARVIS**



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle, WA 98107
Tel. (206) 264-8600