UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTH CASCADES CONSERVATION COUNCIL, a nonprofit organization,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL PARK SERVICE et al.,<br><br>Defendants. | CASE NO. 2:26-cv-03318-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Plaintiff North Cascades Conservation Council's Motion for Preliminary Injunction. Dkt. # 16. The instant motion follows Plaintiff's Motion for Temporary Restraining Order (TRO), in which Plaintiff sought to preserve the status quo by requesting the Court to enjoin Defendants from granting permission or otherwise authorizing work related to the Company Creek Road (the Road) building project within the Stehekin River (the River). *See* Dkt. ## 6. The Court granted the requested relief, and Plaintiff now seeks to make that TRO a preliminary injunction with slight modifications. Dkt. # 16 at 27; *see also* Dkt. # 13.

On the same day Plaintiff filed its Motion for Preliminary Injunction, the organization Stehekin Heritage Defense Committee (Heritage) field a Motion for Leave to File a Brief as Amicus Curiae in support of dissolving or narrowing the TRO and, per a granted stipulation, Stehekin Heritage later supplemented that motion. Dkt. ## 15, 25, 27-30, 37.

The Court has considered the materials filed in support of and in opposition to the motions, the record, and the governing law. In considering these motions, the Court incorporates the background and facts as described in the TRO. *See* Dkt. # 13 at 2-3. For the reasons discussed below, the Court GRANTS Heritage leave to file a brief as amicus curiae and DENIES Plaintiff's Motion for Preliminary Injunction. The bottom line is this: As the flood season approaches, the Court is deeply concerned that the requested injunction may result in significant harm to the residents of the affected area, at least some of whom are in this situation through no apparent fault of their own.

## II
## DISCUSSION

A. Amicus Brief

The "classic role" of amicus curiae is to assist the Court in a case of public interest by "supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). "District courts have broad discretion to admit amicus briefing." *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 862 (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

This case involves the River and the nearby Road, which is a public road that provides access to both federally managed land and private property; this is a case of public interest. *See*

Dkt. # 13 at 2-3. Heritage "advocates for the interest and welfare of the Stehekin Valley community" and, more specifically, its members include residents and property owners above and below the segment of the road at issue, who will be affected by interruptions due to work on the Road. Dkt. # 37 at 3; *see also* Dkt. # 15. Heritage provides a letter and declarations from affected residents. *See* Dkt. ## 15, 29, 30. Heritage also submits a declaration and accompanying exhibits from the Director of the Chelan County Natural Resources Department who states he was a principal staff contact for the community's road-access and flood-risk issues. *See* Dkt. # 28. The interests of the residents reflect unique perspectives that are not represented by either party to this case, and will aid the Court in considering this matter of public interest. To the extent Plaintiff has raised procedural flaws in the amicus brief, those issues have been cured by Heritage's praecipe. *See* Dkt. # 37.

Still, the amicus brief and accompanying declarations are extra-record evidence to the underlying APA claim. *See* Dkt. # 15, 28-30; *see also Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) ("When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision."). The Ninth Circuit only allows extra-record review in narrow circumstances. *See Lands Council v. Powell*, 379 F.3d 738, 747-48 (9th Cir. 2004). The Court thus considers the amicus brief for the limited purpose of considering the final combined prong of the *Winter* test and not related to underlying merits of Plaintiff's claim.[1] *See E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1108 & n.6 (N.D. Cal. 2018) ("Consideration of the public interest at the preliminary relief stage is not, of course, an opportunity to litigate the merits of the agency's decision with extra-record evidence. But limiting the scope of interests to those

[1] Heritage is not prejudiced from seeking leave to supplement the record or supplying extra-record evidence on the merits of Plaintiff's claim at a later stage in litigation.

considered by the agency would not serve the larger public interest"), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), and *aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026). The Court thus grants Heritage's motion for leave to file a brief as amicus curiae in support of dissolving the TRO for the limited purpose of balancing the equities and considering the public interest.

B. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). "A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id*. at 20. The Ninth Circuit has adopted a "sliding scale approach," which may allow for a preliminary injunction when a plaintiff can only show there are "serious questions going to the merits," but "the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

The Court incorporates the legal analysis from the TRO regarding the likelihood of success on the merits as to Plaintiff's National Environmental Policy Act (NEPA) claim.[2] But the Court reconsiders its determination as to the remaining *Winter* factors.

---

[2] The Court provides one point of clarity as to the TRO. Defendants did not raise the issue of extra-record evidence during the TRO briefing. *See generally* Dkt. # 11. Defendants now raise the issue and say Plaintiff's motion improperly relies on declarations that amount to extra-record materials. Dkt. # 24 at 14-15. Given that Defendants have not yet submitted the administrative record, themselves cite materials that may or may not eventually be in the record, and do not explicitly ask for the declaration to be stricken or disregarded, it is unclear what Court action Defendants request. Dkt. # 24 at 14, n.6. (explaining that the administrative record is not due until November 13, 2026); *see also* Dkt. # 11. But regardless, the threshold matter of considering extra-record evidence applies only to the first factor of the

1. Irreparable Harm

Plaintiff says it and its members face irreparable injury because dewatering the River will cause environmental injury as well as harm to itself and its members in their inability to use the River.[3] Dkt. # 16 at 9-11, 24-25. There is no presumption of irreparable harm related to an environmental injury. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 544-45 (1987). But at the same time, "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Id.* Here, should the road construction proceed, the dewatering is certain; at least some large impact is near certain, such as destroying habitat for spawning salmon; and other unknown downstream effects are likely. Dkt. # 9 at 6, 8-9; *see also* Dkt. # 7-4; Dkt. # 7-1 at 16, 18 (CE discussing potential downstream impact); Dkt. # 11-2 at 19 (same). This is more than a mere possibility of harm. In granting the TRO, the Court

---

*Winter* analysis. *See e.g.*, *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078, n.16 (N.D. Cal. 2003) (considering extra-record evidence in connection to the equitable and public interest factors), *Tobin v. Rollins*, 2026 WL 1965921, at *4 (E.D. Cal. July 7, 2026) (collecting case). In the Court's analysis of the first factor in the TRO (which it adopts here), the Court cited only the August and the September Categorical Exclusion Documentation Form and Decision Record (CE). *See* Dkt. # 13 at 7-8. The September CE was submitted by Defendants and, while the August CE was submitted by Plaintiff, Defendants reference it repeatedly and state that "NPS prepared the August CE." *See* Dkt. # 11 at 11; Dkt. # 24 at 11-12; Dkt. # 24-1 at 7, 10-11; Dkt. # 11-1 at 6-7. The CEs are at the core of this case, they are signed and dated documents produced by the agency, and they are the primary documents explaining the agency's actions. *See* Dkt. 7-1; Dkt. # 11-2. Defendants do not argue that the CEs will not eventually appear in the administrative record or that the Court improperly considered them. *See* Dkt. # 24. At this preliminary stage, the Court finds it appropriate to consider the August and September CE even though they are not in an officially submitted administrative record. *See Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) ("[I]t is both unrealistic and unwise to 'straightjacket' the reviewing court with the administrative record"). Because the Court does not rely on the remaining supplemental materials submitted by Plaintiff, it need not consider if an exception to the extra-record evidence rule applies. Plaintiff is not prejudiced from submitting extra-record materials with a proper showing.

[3] Plaintiff also says without a preliminary injunction the construction will likely compromise their efforts to obtain a Wild and Scenic River designation entitling the River to additional protection. Dkt. # 16 at 9-11, 24-25. For the reasons stated by Defendants, this potential harm without more support is too speculative to entitle Plaintiff to equitable relief. *See* Dkt. # 24 at 23-24.

acknowledged Plaintiff had presented a weaker showing but found it sufficient given the strong likelihood of success on the NEPA claim and considering the balance of the equities presented before it by the parties. *See All. for the Wild Rockies*, 632 F.3d at 1135 ("'Serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."). The Court still finds Plaintiff has made a minimal showing of irreparable harm, but unlike in its previous order, the Court now considers the balance of the equities and public interest in light of the Heritage's amicus brief.

2. Balance of the Equities and Public Interest

When the government is a party, the last two *Winter* factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Ninth Circuit has "recognize[d] the well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *All. for the Wild Rockies*, 632 F.3d at 1138. Still, courts "will not grant a preliminary injunction . . . unless those public interests outweigh other public interests that cut in favor of not issuing the injunction." *Id.*

In granting the TRO, the Court relied on both parties' assertion that a temporary ad hoc road provided residential access. Dkt. # 13 at 3 (citing Dkt. # 11-1 at 6 and Dkt. # 6 at 3). Since the TRO was issued, the residents have provided more information on this ad hoc road. *See* Dkt. ## 29, 30. The ad hoc road sits near the River with an approximately a two-foot barrier, but it occasionally floods and is likely to become unsafe for most ordinary vehicles if flooding increases. Dkt. # 29 at 4-5; Dkt. # 28 at 5. Additionally, although Plaintiff says that the Road is only lightly used, the residents paint a much different picture, describing children trekking to

school when the road is inaccessible and a high likelihood that medical care might be made inaccessible for a newborn. Dkt. # 30 at 3; *see* Dkt. # 16 at 4.

Plaintiff says this harm is largely self-inflicted. Dkt. # 32. That seemingly is true of the Government Defendants who appear to have begun construction knowing they would need to go through private property, continued with construction up to that property, and then found themselves with no option but to quickly implement a new CE that allows it to dewater the River and construct a road where the River currently sits. *See* Dkt. # 29 at 3; Dkt. # 13 at 2-3. But the same is not necessarily true for the residents.

Plaintiff says that because a few residents could provide Defendants access to build the Road in an alternate location that the potential injury is self-inflicted. This argument does not persuade the Court. First, although it is unclear from the record, it seems there are residents who live beyond the segment of the unfinished Road who have no ability to provide the Government an alternate route. *See* Dkt. ## 15, 29, 30. But even for the two residents who could at any time provide the government access to their land to allow the Road to be constructed without dewatering the River, the problem is hardly entirely self-inflicted. *See* Dkt. # 15; Dkt. # 35 at 5-8. The residents have said that they have been in discussion with the National Parks Service and Chelan County for months, have indicated they would be willing to provide access if provided compensation, and did not outright refuse to provide access. *See* Dkt. # 29 at 3-4. The Court cannot find that the balance of the equities and public interest favors an outcome that all but requires the residents of the impacted area to either face potentially devastating flooding or unilaterally give up portions of their property to the government. With the high potential for flooding, the Court finds that to preserve the status quo would likely result in preserving a dangerous situation. And thus, Plaintiff has not established that the balance of the equities or public interest favor a preliminary injunction and the TRO must be lifted. *See e.g.*, *Klamath-*

*Siskiyou Wildlands Ctr. v. Grantham*, 785 F. App'x 467 (9th Cir. 2019) (affirming district court's order staying an injunction where the public interest favored allowing a project to prevent fires even where the remaining *Winter* factors might have favored the injunction).

## III

## CONCLUSION

For these reasons, the Court GRANTS Heritage leave to file a brief as amicus curiae, Dkt. # 15, and DENIES Plaintiff's Motion for Preliminary Injunction, Dkt. # 16. The Court ORDERS the TRO lifted. Dkt. # 13.

Dated this 22nd day of October, 2026.

John H. Chun

John H. Chun
United States District Judge